# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLYBURN HALLEY<br>P.O. Box 9123<br>Pittsburgh, PA 15224<br><br>     Plaintiff,<br><br>   v.<br><br>PITTSBURGH TECHNICAL INSTITUTE, INC.<br>D/B/A PITTSBURGH TECHNICAL COLLEGE<br>1111 Mckee Road<br>Oakdale, PA 15071<br><br>     Defendant. | Civil Action No.: 2:21-cv-1688<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT – CIVIL ACTION

Plaintiff, Clyburn Halley ("Plaintiff"), by and through his undersigned attorney, for his Complaint against Pittsburgh Technical Institute, Inc. ("Defendant"), alleges as follows:

## INTRODUCTION

1. Plaintiff initiates this action contending that Defendant has violated Plaintiff's rights protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA").

## PARTIES

2. Plaintiff, Clyburn Halley, is an adult American citizen who currently maintains a residence at P.O. Box 9123, Pittsburgh, PA 15224.

3. Defendant, Pittsburgh Technical Institute, Inc. d/b/a Pittsburgh Technical College, is a non-profit corporation operating and existing under the laws of the Commonwealth of Pennsylvania with a registered office address located at 1111 Mckee Road, Oakdale, PA 15071.

4.	At all times relevant hereto, Defendant acted or failed to act through its agents, servants, and/or employees thereto existing, each of whom acted at all times relevant hereto in the course and scope of their employment with and for Defendant.

## JURISDICTION AND VENUE

5.	Paragraphs 1 through 4 are hereby incorporated by reference, as though the same were fully set forth at length herein.

6.	On or about November 17, 2020, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. 2000e5(b) and (e).  Plaintiff's EEOC charge was docketed as EEOC Charge No. 533-2020-02260.  On or about May 20, 2021, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. 2000e5(b) and (e).  Plaintiff's EEOC charge was docketed as EEOC Charge No. 533-2021-01010.  Plaintiff's EEOC Charges were filed within one hundred and eighty (180) days of the unlawful employment practices.

7.	By correspondence dated August 24, 2021, Plaintiff received two (2) Notices of Rights to Sue from the EEOC regarding his Charges, advising him that he had ninety (90) days to file suit against Defendant.

8.	Plaintiff has therefore exhausted his administrative remedies and has complied with all conditions precedent to maintaining this action.

9.	This action is authorized and initiated pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981.

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

11. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims arise from the same nucleus of operative facts as his federal claims.

12. The venue in this district is proper under 28 U.S.C. § 1391(b), as Plaintiff resides in this judicial district, Defendants do business herein, and the events giving rise to this action occurred in this judicial district.

## FACTUAL ALLEGATIONS

13. Paragraphs 1 through 12 are hereby incorporated by reference as though the same were fully set forth at length herein.

14. On or about August 5, 2019, Defendant hired Plaintiff in the position of Chief of Police.

15. Throughout the course of Plaintiff's employment, he performed his job well, receiving positive reviews of his performance, occasional raises, and no justifiable discipline.

16. During the course of his employment with Defendant, Plaintiff was routinely the subject of harassment and/or was witness to the harassment of his fellow colleagues on the basis of race (African-American) by Defendant's employees and management, who, upon information and belief, are predominantly not African-American.

17. As a result of this racial discrimination, at the end of 2019, Plaintiff advised Dr. Alicia Harvey Smith ("Dr. Harvey Smith") of his complaints of racial discrimination, but no remedial action was taken.

18. Because Plaintiff continued to be subjected to racial discrimination, in or around February 2020, Plaintiff met with Defendant's Human Resources Manager, Nancy Starr ("Ms. Starr"), Attorney, Peter Rich ("Mr. Rich"), and employee, George Pry ("Mr. Pry").

19. During this meeting, Plaintiff made another good-faith complaint of on-going racial disparity and discriminatory conduct throughout Defendant's workplace.

20. Furthermore, at or around that same time, Plaintiff also advised Defendant's Director of Finance, Jay Clayton ("Mr. Clayton"), of the aforementioned ongoing racial disparity and discriminatory conduct taking place at Defendant's campus.

21. Sometime thereafter, on or about June 2, 2020, Plaintiff was notified of an email sent from Defendant's Officer, Willie Binion ("Mr. Binion"), to Defendant's Lieutenant, Gregory Bolyard ("Mr. Bolyard").

22. Notably, Mr. Binion is African-American.

23. This email exchange informed Mr. Bolyard of Defendant's Officers, Thomas Schultz and Teddy Anderson, advising Mr. Binion to stay away from certain locations on Defendant's campus in light of recent protests; stating, "We do not want to find you hanging from a tree."

24. On a separate occasion, Plaintiff was notified by Mr. Binion of being the subject of discriminatory conduct and harassment on the basis of his race by Defendant's Officer, Raymond Kain.

25. In response to Mr. Binion's complaint, in addition to a separate complaint of Mr. Kain engaging in racially discriminatory conduct filed by a student's parent at Defendant's campus, Plaintiff attempted to investigate the complaint, but was told by Mr. Clayton to not investigate the complaint and "just let it go."

Case 2:21-cv-01688-NR   Document 1   Filed 11/18/21   Page 5 of 12

26. Upon information and belief, Plaintiff was implicitly advised by Mr. Clayton, *inter alia*, to not discipline Defendant's Caucasian employees.

27. Following Plaintiff's aforementioned good-faith reports of racial disparity and discriminatory conduct, Plaintiff began receiving pushback from Mr. Clayton and Defendant's management in regard to meeting compliance standards with the Pennsylvania Attorney General's Office, necessary in maintaining accreditation as a law enforcement agency.

28. Furthermore, subsequent to Defendant's Caucasian employees being investigated for the aforementioned complaints of racial disparity and discriminatory conduct, Plaintiff began experiencing insubordination from same, such as, *inter alia*, disrespectful emails, failure to comply with submitting requested reports in a timely manner, and failure to provide requested information from Defendant's Human Resources department, ultimately resulting in Plaintiff being unable to effectively perform the necessary functions of his job.

29. In or around June 2020, Plaintiff advised Defendant of its disparate pay practices, such as Plaintiff's Caucasian department and/or leadership counterparts earning higher compensation than himself, and requested a raise.

30. Notably, Plaintiff's Caucasian department and/or leadership counterparts were earning approximately an additional $40,000 to $60,000 more per year than Plaintiff.

31. Ultimately, Plaintiff's request was to no avail.

32. In or around that same time, Plaintiff continually followed-up with Defendant regarding the remodeling of the police office, amongst other necessary compliance measures needed for maintaining accreditation as a law enforcement agency.

33. Upon information and belief, Plaintiff's requests and follow-ups were largely disregarded, despite approximately ten (10) to fifteen (15) other projects being completed on campus, whose department and/or leadership were predominantly not African-American.

5

34. It also should be noted that in November 2020, Plaintiff filed a charge of discrimination with the EEOC alleging racial discrimination and retaliation for his complaints in connection thereto.

35. Additionally, in or around February 2021, Plaintiff learned that the Chief of Police, Gregory Bolyard announced the promotion of two ranking Officers, including Officer Kain, the officer who Plaintiff and other fellow colleagues named in their reports of engaging in racially discriminatory practices.

36. Further, it should be noted that Officer Kain was not even eligible for consideration due to his disciplinary actions, but yet Ms. Starr and Mr. Clayton promoted him.

37. Accordingly, in February 2021, Plaintiff again brought complaints of racial discrimination and questioned why Officer Kain was promoted despite his disciplinary action, numerous reports of engaging in racially discriminatory conduct towards Plaintiff and Officer Binion.  Nonetheless, Officer Kain continued to be promoted, effective October 2021.

38. On or about April 8, 2021, Plaintiff was abruptly terminated from employment by Defendant.

39. Egregiously, Defendant's stated reason for Plaintiff's termination was for "yelling with a patient," despite Defendant being a college campus without patients. At all times relevant hereto, it remains unclear as to the reason for Plaintiff's termination.

40. Despite Defendant advising Plaintiff he was terminated from employment for "yelling with a patient," Defendant denied Plaintiff's unemployment compensation, stating that Plaintiff was terminated because he was "incompetent."

41. Upon Plaintiff challenging Defendant's statement during his unemployment compensation hearing, Defendant admittingly stated they made a mistake, that Plaintiff was not incompetent, and that Plaintiff earned high remarks at every presentation to the board.

42. Critically, Plaintiff was not terminated for incompetence, nor does Defendant's campus contain patients, thereby resulting in Plaintiff's termination from employment to be devoid of any negative contributing factors for same.

43. Most significantly, it should be noted that the Commonwealth of Pennsylvania Department of Labor and Industry, Office of Unemployment Compensation Benefits, found that Plaintiff was discharged for filing a complaint against Defendant with the EEOC.

44. Accordingly, based on the foregoing, Plaintiff believes that he was subjected to severe and/or pervasive harassment because of his race, and in retaliation for making good-faith complaints of discrimination and/or harassment on the basis of race to the, in connection thereto, in violation of Title VII and Section 1981.

## COUNT I
## TITLE VII, 42 U.S.C. § 2000e, *et seq.*
## DISCRIMINATION, RETALIATION & HOSTILE WORK ENVIRONMENT

45. Paragraphs 1 through 44 are hereby incorporated by reference as though the same were fully set forth at length herein.

46. Defendant employed at least fifteen (15) employees at its various locations at all times relevant hereto.

47. Plaintiff is African American and as such is a member of a class protected under Title VII from unlawful discrimination or harassment because of race.

48. Defendant engaged in discriminatory behavior toward Plaintiff on the basis of his race, in violation of Title VII.

49. Defendant subjected Plaintiff to or otherwise permitted the existence of a hostile work environment because of his race, in violation of Title VII.

50. Plaintiff made good-faith complaints of discrimination on the basis of race.

51. Defendant failed to take appropriate remedial action to address Plaintiff's complaints.

52. Plaintiff was retaliated against for making good-faith complaints of discrimination on the basis of his race by Defendant terminating Plaintiff from employment.

53. Defendant acted with reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

54. Because of Defendant's unlawful acts, Plaintiff suffered damages in the form of, *inter alia*, mental and emotional damages, loss of reputation, personal humiliation, and loss of life's enjoyment.

55. As a direct result of Defendant's deliberate, unlawful, wanton, and malicious actions, Plaintiff has suffered emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgement in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and employee benefits in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000);

B. Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C. Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount; and

E. Such other and further relief as is just and equitable under the circumstances.

## COUNT II
## 42 U.S.C. § 1981
## DISCRIMINATION, RETALIATION & HOSTILE WORK ENVIRONMENT

56. Paragraphs 1 through 55 are hereby incorporated by reference as though the same were fully set forth at length herein.

57. Plaintiff avers that Defendant discriminated against him with respect to the terms and conditions of his employment on account of his race, subjected Plaintiff to a hostile work environment because of his race, and retaliated against Plaintiff for his internal complaints of race discrimination. Plaintiff has suffered damages and seeks relief for these willful adverse actions.

58. Defendant's actions as aforesaid constitute violations of 42 U.S.C. § 1981.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgement in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and employee benefits in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000);

B. Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C. Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount; and

E. Such other and further relief as is just and equitable under the circumstances.

## COUNT III
## THE PENNSYLVANIA HUMAN RELATIONS ACT 43 P.S. § 951, *ET SEQ.*
## RACE DISCRIMINATION, RETALIATION, & HOSTILE WORK ENVIRONMENT

59. Paragraphs 1 through 58 are hereby incorporated by reference as though the same were fully set forth at length herein.

60. Plaintiff is African American and as such is a member of a class protected under the PHRA from unlawful discrimination or harassment because of race.

61. Defendant engaged in discriminatory behavior toward Plaintiff on the basis of his race.

62. Additionally, Defendant subjected Plaintiff to or otherwise permitted the existence of a hostile work environment because of his race.

63. Ultimately, Defendant took tangible employment action against Plaintiff in the form of termination from employment because of Plaintiff's race and in retaliation for Plaintiff's good faith complaints of race discrimination and a hostile work environment in connection thereto, in violation of the PHRA.

64. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

65. The conduct described above constitutes a violation of the Pennsylvania Human Relations Act, 43 P.S. § 955, *et seq.*, and affords Plaintiff the opportunity to seek any and all remedies available under said Act.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and compensatory damages in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

  B. Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

  C. Pre-judgment interest in an appropriate amount;

  D. Such other and further relief as is just and equitable under the circumstances; and,

  E. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By: /s/ Michael Groh
   Michael Groh, Esq.
   PA Attorney ID No.: 319296
   Eight Penn Center, Suite 2000
   1628 John F. Kennedy Blvd.
   Philadelphia, PA 19103
   TEL: 267-273-1054
   FAX: 215-525-0210
   mgroh@phillyemploymentlawyer.com
   *Attorney for Plaintiff*

Dated: November 18, 2021

## **DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to his potential claims and his claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.